No. 44,616

A. E. Davis, *Appellee*, v. Joe Ward Construction Company and Employers Mutual Casualty Company, *Appellants*.

(419 P. 2d 918)

Opinion filed November 5, 1966.

*H. Lee Turner*, of Great Bend, argued the cause, and *J. Eugene Balloun* and *James Berglund*, of Great Bend, were with him on the briefs for appellants.

*R. R. Mitchell*, of Dodge City, argued the cause, and *Don C. Smith*, of Dodge City, was with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: The claimant was awarded workmen's compensation in the proceedings before the workmen's compensation director and in the district court. The respondent employer and the insurance carrier appeal. For purposes of brevity, both appellants are hereafter referred to as respondents.

On May 22, 1963, the claimant, A. E. Davis, a 53-year-old carpenter, was on his way to work when his automobile and a train collided at a railway crossing near Ryus, Kansas, and he was seriously injured. His thumb was nearly severed; his right elbow was badly cut; two ribs were broken, and cuts about his forehead laid his scalp back. He was initially hospitalized for only a few hours in Sublette, Kansas, but was examined by several doctors in the succeeding months prior to the hearing for compensation. Subsequently, the claimant moved to Naturita, Colorado, near Denver.

The claim for compensation was regularly heard by an examiner for the workmen's compensation director on November 6, 1963, and by depositions on December 20, 1963, March 19, 1964, and July 1, 1964. At the hearing before the examiner, the parties stipulated that the claimant was in the respondent's employ; that the Employers Mutual Casualty Company was the insurance carrier; that while so employed, the claimant sustained personal injury by accident

arising out of and in the course of his employment; that notice was had and written claim made within the statutory period, and that the claimant's average weekly wage was $130 per week. It was agreed the issue for determination was the extent of disability and the amount of compensation·due.

On November 28, 1964, the examiner entered an award finding the claimant sustained a fifteen percent permanent partial general disability and was entitled to compensation in accordance with the mathematical amounts and calculations stated in the award.

On the same day, November 28, 1964, the respondents, by and through their counsel of record, filed a request with the director pursuant to K. S. A. 44-551 to review the award entered by the examiner.

On January 6, 1965, the review by the director was heard in Great Bend. At the hearing, counsel for the claimant made an oral motion which was confirmed by a written motion filed the following day, requesting the director to reopen the claim for further evidence. Attached to the motion was a copy of a letter and a report from Dr. Thomas K. Craigmile, a neurosurgeon, of Denver, Colorado, dated December 14, 1964. The report stated the claimant continued to have headaches, visual disturbance, episodes of "blacking out," difficulty in maintaining equilibrium, experienced some impairment of cerebration, and that one must consider the possibility of the claimant having a serious brain injury manifested by either a chronic subdural hematoma or a cerebral atrophic process. He recommended the claimant be hospitalized for a thorough neurological examination which would include skull films, an EKG, caloric testing, and perhaps an angiogram or a pneumoencephalogram.

On January 12, 1965, the director, being fully advised in the premises, found that the record was not clear as to the claimant's present physical condition and ordered that the award be set aside and the proceeding remanded to the examiner. In his order, the director found that the examiner should appoint a neutral physician or should send the claimant to a clinic for the purpose of having him undergo a complete physical and neurological examination.

Thereafter, and in accordance with the order of the director, but on a date not disclosed by the record, the examiner appointed Dr. Craigmile to make a complete physical and neurological examination of the claimant and file a report of his conclusions in the proceeding.

Subsequently, but prior to receiving the examiner's order appointing him as a neutral physician to examine the claimant, Dr. Craigmile admitted the claimant to St. Joseph's Hospital in Denver, and during the first and second weeks in January 1965, performed a series of diagnostic tests including X-ray of the skull, an electroencephalogram, a carotid arteriograph, and a pneumoencephalogram, The claimant was not re-examined by Dr. Craigmile following the receipt of the examiner's order of appointment.

On April 5, 1965, Dr. Craigmile forwarded a report of his findings to be filed in the proceeding and copies were mailed to counsel of record. His report stated the claimant was suffering from a moderate degree of cerebral atrophy. Thereafter, and on May 14, 1965, Dr. Craigmile's deposition was taken at Denver, where counsel for both parties examined him at length. It is unnecessary here to state his findings of claimant's disability and it is sufficient to say he stated that in his opinion the claimant was 75 percent disabled which was causally related to his injury on May 22, 1963.

On July 15, 1965, Dr. Craigmile's deposition was filed with the director who determined that it would be advantageous to all parties if he took the matter under advisement and rendered a decision rather than remand the case to the examiner who was then in the process of resigning his position from the commission.

On July 30, 1965, the director filed his written decision finding that as a result of the claimant's accidental injury on May 22, 1963, he "suffered 9 compensable weeks of temporary total disability, and since that time has suffered and is suffering a 50% permanent partial disability to the body as a whole." An award was entered in harmony with his findings.

Between the dates of the director's award on July 30, 1965, and August 6, 1965, when the respondents perfected an appeal to the district court, the respondents changed counsel.

The district court adopted the findings and orders of the director as its findings and judgment, and in a memorandum opinion stated:

"Respondents complain that Dr. Craigmile was not a 'neutral' physician as contemplated by the act and object to claimant's assertion that the respondent and insurance carrier acquiesced and agreed that Dr. Craigmile be appointed as a neutral physician and that there is nothing in the record to support such a statement of conclusion.

"The record does show that the respondent and insurance carrier were represented by their attorney at all hearings before the examiner and the director. The hearing at Great Bend before the director on January 6, 1965, was upon respondent's motion for review. The record does not show that

claimant's attorney made an oral motion [the proceedings] should be remanded to the examiner. *The record does not show any objection, written or oral, to the Director's order of January 12, 1965.*

"The respondents, after asking for and participating in a review, are in a poor position to make their first complaint in the appeal to this Court, to the Director's orders made as a result of such hearing. These findings are not intended as any criticism whatsoever of the attorney that represented the respondents and insurance carrier at the proceedings before the examiner and director.

"Although proceedings before an examiner or director under the workmen's compensation act are adversary, cooperation between the participants, and the examiner or director usually obtain the best results. I believe this is especially true *as to respondents and insurance carriers.* This statement is based upon the large number of settlements made both in and out of Court." (Emphasis supplied.)

The respondents here contend the district court erred in finding that claimant sustained injury on May 22, 1963, resulting in 50 percent permanent partial disability; in finding that the appointment of a "neutral" physician followed the procedures set forth in K. S. A. 44-528 and 44-551; in finding that Dr. Craigmile was a "neutral" physician when the record established he was the claimant's doctor, and in refusing to disregard the report and testimony of Dr. Craigmile.

The respondents have failed to sustain the burden of making it affirmatively appear the district court erred in any respect. As found by that court, they made no objection, written or oral, to the director's order of January 12, 1965, nor did they object to the examiner's order directing that Dr. Craigmile examine the claimant, or to the taking of his deposition in Denver or the filing of the same, or to the director's consideration of his testimony prior to entering the award. In view of the respondents' request for review pursuant to K. S. A. 44-551, the director was the only official authorized to make an award of compensation upon the transcript of evidence and proceedings before him. (*Pence v. Centex Construction Co.,* 189 Kan. 718, 721, 371 P. 2d 100; *Harper v. Coffey Grain Co.,* 192 Kan. 462, 388 P. 2d 607, Syl. ¶ 3; *Bammes v. Viking Manufacturing Co.,* 192 Kan. 616, 389 P. 2d 828; *Cramer v. Blankenship Painting & Decorating Co.,* 197 Kan. 360, 416 P. 2d 255.)

It is well settled that the jurisdiction of the district court in a workmen's compensation case is to grant or refuse compensation, or to increase or decrease any award as justice may require. In *Scammahorn v. Gibraltar Savings & Loan Assn.,* 197 Kan. 410, 416 P. 2d

771, it was held this court will not review the determination of an issue of fact which was raised for the first time in the district court. It was said that to hold otherwise would be manifestly unfair to a party who would be required to anticipate new and different issues which for the first time might be advanced in the district court. In the opinion it was said:

". . . Our reasoning is buttressed by the language of K. S. A. 44-556 to the effect that any party may appeal upon questions of law and fact as *presented and shown* by a transcript of the evidence and proceedings presented before the director." (l. c. 415.)

And so here. Having asked for and participated in a review without making any objection to the evidence and proceedings as presented, had, and introduced before the director (44-556), the respondents may not raise questions and pursue them on appellate review when they were raised for the first time in the district court.

Although we are advised by the claimant that almost simultaneously with the notice of appeal to this court, the respondents filed a motion pursuant to K. S. A. 44-528 to review and modify the award of compensation entered by the director, it is crystal clear that statute is no wise involved in the appeal.

There was ample evidence in the record upon which to base an award that the claimant has suffered and is suffering a 50 percent permanent partial disability to the body as a whole. It would unduly extend this opinion to review that evidence. No error being affirmatively made to appear, the judgment of the district court is affirmed.